# United States District Court
for the
Middle District of Tennessee

NATIONWIDE MUTUAL INSURANCE COMPANY,

Plaintiff,

V.

ON YOUR SIDE ADJUSTERS INC. and JEREMY SNYDER,

Defendant

Civil Action No. 3-14 0586

Judge Trauger

Magistrate Judge Brown

## BENCH BRIEFING BY DEFENDANT SNYDER REGARDING ISSUES FOR JULY 30TH 2014 STATUS CONFERENCE

On July 22nd, 2014, Nationwide requested an expedited status conference to address what it claimed was an escalating public relations attack on it by Defendant Snyder. In response, on that same day Defendant Snyder filed a request asking the court to deny the expedited conference and explained his position on the subject. Against Snyder's wishes the court ordered such expedited status conference on July 24th, 2014 and set it for Wednesday July 30th, 2014 at 1:30pm. This briefing is meant to give the court an outline as to the arguments that Defendant Snyder will be presenting to the court at that conference in addition to those included in his July 22nd, response.

Nationwide argues that Defendant Snyder has posts on his OYSA website and Facebook page that espouse his entire false advertising theory and constitute commentary on evidence in violation of L.R 83.02(a)(2)(a). AND has impugned Nationwide's character and credibility in violation of L.R 83.02(a)(2)(b)

*a)* Only a few posts on the Facebook page and the website were written by Snyder and all posts outside of his complaint written by him were posted to the sites prior to Snyder filing his counterclaim that included any of such verbiage as accused in Nationwide's motion.

b) L.R. 83.02(a)(2)(a) and (a)(2)(b) refers to actions ***By Attorneys Concerning Civil Proceedings.*** The rule expressly states **"An attorney or Law firm"** and no where in that Rule does it mention ProSe Litigants, Defendants, or Plaintiffs. ***Pro Se litigation is defined as legal self-representation in court "without an attorney".*** Pro Se" is Latin for "For Self" or in one's own behalf. You appear "Pro Se" in a legal action when you represent yourself directly in a legal action (in or out of court) and ***"do not have an attorney"*** speaking or writing for you."Pro-Se" refers to representing yourself in any type of legal matter ***without the benefit of legal counsel or an attorney***. It is not defined as *"you just become an attorney"* and every federal rule that apply to attorneys now apply to you. In addition if the court should rule that this Federal Rule should apply to Snyder, and it feels that Snyder violated the rule, ***Snyder could not have reasonably been expected to know that and should not be penalized for not knowing such information.***

At the status conference Defendant Snyder intends to show that Plaintiff Nationwide and it's attorneys are demonstrating *a pattern of deception* within their arguments detailed in their July 22nd Motion (Docket Entry #93). This pattern of deception is the same type of pattern that was used in Nationwide's bringing of this case against Defendant Snyder at the start. It is a pattern in which Nationwide uses an *Abuse Of Process* by bringing one argument within the court with the hopes of confusing the actual issues at hand and tries to persuade the court to GRANT AN ORDER that accomplishes another goal set by Nationwide knowing from the start that the actual goal it is trying to get accomplished has no grounds to be brought to the court. *The essential elements of the tort of abuse of process are (1) an ulterior purpose and, (2) a willful act in the use of process not proper in the regular conduct of the proceeding.* Both will be proven within Defendant Snyder's arguments.

### DECEPTION AND CONTRADICTIONS DETAILED IN (Docket Entry #93)

a)  (Nationwide writes at Pg 1 line 5-8, Pg 3 line 5-7, Pg 6 line 7-8 and 15-18 *Pg 7 Section B.*) These actions were part of Mr. Snyder's announced plan to create "a dragged out court case and media circus." create the "worst PR nightmare." delay the litigations. Nationwide also attempts to convince the court that Snyder's $2,500,000 or $3,000,000 monetary requests associated with his initial settlement proposals "Were Outrageous" and were OR ELSE demands made by Snyder. Nationwide claimed that Snyder said if Nationwide didn't pay that amount he would intentionally create the

"Worst PR nightmare" in Nationwide's history.

      **(What was actually written by Snyder)** These references are described by Nationwide as part of a March 24th e-mail from Snyder to Nationwide attorneys "exhibit A". At the start of the case after Snyder had already lost his company and taken a substantial lose *"Which Snyder Calculates at Tens Of Millions"* due to Nationwide's actions, Defendant Snyder attempted to present his hand, strengths, and projections as to the *"Hypothetical"* outcomes of the case to Nationwide in an attempt at reasoning with it with the hopes of reaching an early settlement resolution before either of the two party's invested a substantial amount of time or money into the case or any of such hypothetical case outcome scenarios occurred. Defendant Snyder started out the e-mail with the following sentence. *"To whom it may concern, is Nationwide interested in just resolving this matter WITHOUT a dragged out court case and media circus?"* Snyder did not threaten to create a *"Dragged our court case and Media Circus"* as described by Nationwide several times within its motion.

      In addition there is no where in that e-mail or within any other communication where Snyder announced that he planned to create "a dragged out court case and media circus." the "worst PR nightmare." delay the litigations, or any of the dozens of other quotes or statements included in Nationwide's motion (Docket Entry #93). Nationwide is using deception as a method to attempt to convince the court that Snyder was responsible for delaying the case in an *attempt at getting the court to*

*award it legal fees should it win this case.* If you read the email (Exhibit A) first and then (Docket Entry #93) filed by Nationwide you will see dozens of deceptive and out of context statements that it used within its motion to substantiate the motion.

b) **(Nationwide writes at Pg 2 line 3-4 and 7-9, Pg 6 line 15-18, Pg 8 line 1-2)** "Snyder posted harassing content to Nationwide's agents' publicly available Facebook pages.", "Publicly accusing them", "attempted to solicit information from them to use against Nationwide in this lawsuit."

**(What actually happened)** Snyder who is a licensed public adjuster and currently *works on a regular basis outside of this case with Nationwide Insurance Company agents and affiliates,* in the interest of protecting the public and proving the Nationwide's "On Your Side" slogan in all of it's forms is deceptive and unenforceable, filed a complaint against Nationwide Mutual Insurance Company and it's agents with several enforcement and consumer protection agencies outside of this court. Snyder informed some of the agents of such filing via their Facebook page **"PRIVATE MESSAGE."** In no instance did Snyder post the complaint or inform the agent that a complaint had been filed against them on any "Publicly Available" area of their Facebook page, he did not publicly accuse them, or publicly or privately ask them any questions whatsoever to be used against Nationwide and I challenge Nationwide to show one piece of evidence that substantiates those false allegations. Such statements are not true and are being used as part of Nationwide's pattern of deception.

c) **(Nationwide writes at Pg 4 line 4-8)** Mr. Snyder also admitted in an article

on his website that his strategy is to delay this litigation and drive up Nationwide's legal fees. *"Without a high priced international law firm running up a bill on every little task on my side, such as Nationwide has on their side, I am able to stick it out financially for as long as it takes. Only Nationwide will truly lose financially on such delays."*

**(What actually happened)** This is one of the worst deceptions of all by Nationwide. See (Exhibit B) which is the article that Nationwide is referring to. Within it you will see that directly above the quoted statement that Plaintiff Nationwide is referring to is a statement by an attorney with 30yr Intellectual Experience *"If he "Snyder" lasts financially and gets before a judge, he has some pretty good arguments, but they [Nationwide] will bury him in a 3-foot high stack of discovery documents and it will drag on forever," he said. "Unless he's "Snyder" got a lot of money, they will just outlast him."* Snyder responded to that statement with the statement about his strategy to keep his legal fees low so that he can last through **"Nationwide's Delay Technics."** It can be easily proven in the article that Nationwide took Snyder's statement completely out of context again and was being deceptive with the court in the way that it presented the statement to the court. This is another example of Nationwide's pattern of deception.

## ADDITIONAL ARGUMENTS

Snyder still works as a public adjuster and Nationwide still works as an insurance company outside of this case, so in the interest of protecting all of his current

and potential clients as well as the interest of consumer protection in general, Snyder should retain the right to discuss the deceptive behavior of Nationwide Mutual Insurance Company with the general public and be permitted to inform Nationwide agents if complaints are filed by Snyder or his clients against them.

I again ask that the court not allow Plaintiff Nationwide Mutual Insurance Company to use this case as a means to keep a public adjuster who advocates and works ON THE SIDE of the insured from protecting the insured, defending himself, and protecting the public from Nationwide's deception and unfair advantage.

Everything I have said in every statement, interview, pleading, email, etc. about this case has been the truth. As can be seen in Nationwide motion (Docket Entry #93), Nationwide does not represent the truth.

Respectfully submitted,

Dated this 29th day of July, 2014

*Jeremy Snyder Electronic Signature*
Jeremy Snyder
615 Newton Lane
Gallatin, TN 37066

Attention:
Salvador M Hernandez
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203

Page 7

Case 3:14-cv-00586   Document 101   Filed 07/30/14   Page 7 of 13 PageID #: 1316

# EXHIBIT A



Jeremy Snyder &lt;onyoursideadjusters@gmail.com&gt;

## Re: Nationwide Mutual Insurance Company vs. On Your Side Adjusters, Inc
1 message

**Jeremy Snyder** &lt;onyoursideadjusters@gmail.com&gt;            Mon, Mar 24, 2014 at 4:18 PM
To: "Dever, Kerri" &lt;Kerri.Dever@squiresanders.com&gt;
Cc: "Auvil, Steven M." &lt;Steven.Auvil@squiresanders.com&gt;, "Thuermer, John J." &lt;John.Thuermer@squiresanders.com&gt;, "Lasley, Aneca E." &lt;Aneca.Lasley@squiresanders.com&gt;, Sal Hernandez &lt;SHernandez@rwjplc.com&gt;

To whom it may concern

Is Nationwide interested in just resolving this matter without a dragged out court case and media circus?

Even though I don't feel that I am in anyway in violation of Nationwide's trademark right as detailed in my response to them last year, I still attempted to avoid conflict with them by starting (at my cost) a new company by the name of National Claim Managers, Inc. back in July of 2013. Since then I have not distributed a flyer, advertisement, etc., other then leaving my website and Facebook page online (Which I have not gotten one lead from since I originally launched them).

I have done $0,00 paid advertising other then website and domain name fees and canvassers, and I have distributed less then 1500 flyers via door to door marketing total for that company in it's history. Also I have not taken a single new project under the name On Your Side Adjusters, Inc since late June, early July of last year. I have simply tried to close out my old claims with that company before I dissolved the corporation and shut down it's website and Facebook page. I have done claims with Nationwide under my new company name since starting the new company which collaborates with what I'm saying.

This move by Nationwide has cost me a lot of time and money while also hurting my reputation and the overall growth of my company and career. I am not sure as to why Nationwide feels that On Your Side Adjusters $30,000 in gross (before expenses) adjusting fees that they have brought in since it's start is somehow diluting Nationwide's 200 billion dollar company, but apparently they do. The way I see it is, it's like saying that by putting a drop from eye dropper into a lake, the lake is then diluted. Anyway, it is what it is and they think what they think so we just have to proceed.

I have not hired a legal team yet, nor have I made a decision on exactly how I am going to proceed with my legal strategy, counter claims, etc, but what I am sure about from all of the calls I get from reporters and from the comments and likes on the stories that have been run to this point is that this case is going to make Nationwide look very bad when it hits National news. Nationwide, a company that is not licensed to work on the side of the insured is suing a small public adjusting company in Gallatin TN, who is licensed to, and actual does work on the side of the insured. This suit is because that public adjusting company uses the common descriptive term on your side in its company name, and Nationwide doesn't want people to be confused as to who is actually working on their side. (see attachment)

Outcome potentials:
1) Nationwide wins the case
a) They spend $100's of thousands of dollars on attorneys and legal fees because we will definitely be going to trial even if I decide to just represent myself, and since I don't have anything for them to get, they will most likely just force a small public adjuster into filing a bankruptcy if they do win.
b) They will get bad press from all over, they will spend possible 10's-100's of millions of dollars on PR, all depending on how bad people laugh at them for even filing this case, and also depending on how many people I can get behind me to stand up to them.
c) On Your Side Adjusters, Inc. will no longer operate as a public adjusting company. (Which they don't do now anyway)

2) I win the case
a) What if, I counter sue and win against them for a minimum of $40,000,000 in damages and prove that this is nothing more then harassment against me and my company?

b) What if, I spend every waking second I have organizing and running the case, and I prove that Nationwide is in fact using deceptive advertising by marketing the slogan "On Your Side" when they are not legally representing the insured and the contract that they market and the insured signs, actually puts the insured and Nationwide on opposite sides of that contract? With the terms of that contract being the product that is sold directly by their "On Your Side" marketing, I think I can win it.
c) What if I win, or even come close to winning and Nationwide has there worst PR nightmare in history? Also think about all the other people that have a lot more power then me that might jump on board.
d) What if I win, and the court allows me to use the name On Your Side Adjusters, Inc. and tells Nationwide that they cannot use "On Your Side"?
e) What if, a class action suit starts against them when people who were denied claims sue them because they felt that they were sold someone On Their Side when signing their contract and then when it came to proving the loss they found out that they were in fact on opposite sides of the company they had contracted with.
f) What if Nationwide has to recall all of their signs, commercials, and marketing materials?
g) What if, they actually loose the right to use the "On Your Side" slogan?

So the worst case scenario for me is a bankruptcy. What is the worst case scenario for Nationwide? Please remember that Nationwide brought this to me and is messing with my life and my livelihood. I am in it for the long haul if I have to be, but would prefer to end it now. Please consider the what if's when reading and deciding on my informal offer to resolve this dispute. The offer is valid for 72 Hrs from the date and time I send this e-mail.


THE OFFER:

Within 30 days, Nationwide pays me, Jeremy Snyder the sum of ($2,500,000.00) and drops the case against both me and On Your Side Adjusters, Inc. in exchange for me agreeing to the following.

1) I will remove the On Your Side Adjusters, Inc. website and all of its data from the WWW within 48hrs of a signed agreement.
2) I will remove the On Your Side Adjusters, Inc. Facebook page and all of its data from the WWW within 48hrs of a signed agreement.
3) I will pay staff to send releases and closeout the few old active claims under On Your Side Adjusters, Inc. and switch everything to my new company within 30 days of a signed agreement.
4) I will dissolve the corporation On Your Side Adjusters, Inc. within 30 days of a signed agreement. (plus any time for state agency delays if applicable)
5) I will close all On Your Side Adjusters, Inc. bank accounts within 30 days of a signed agreement.
6) I will surrender all flyers, business cards, and any other marketing materials that I have for On Your Side Adjusters, Inc. within 30 days of a signed agreement.
7) I will agree to never work under, market, promote, or use the name On Your Side Adjusters, Inc. again other then as required to fulfill my obligations for everything in lines 1-6.
8) I will agree to other items requested by Nationwide so that they feel comfortable that the On Your Side Adjusters, Inc. is gone for good and this situation is resolved.

Your company can write up the contract and send it to me to be signed. Please have an answer one way or another to me within 72hrs.


Sincerely,
Jeremy Snyder
(404)667-5152

Please see my attachment

.



On Fri, Mar 21, 2014 at 3:04 PM, Dever, Kerri <Kerri.Dever@squiresanders.com> wrote:

Mr. Snyder:

# EXHIBIT B





View this article online: http://www.insurancejournal.com/news/national/2014/05/13/328876.htm

# Adjuster Hunkers Down for Lengthy Battle with Nationwide Over 'On Your Side' Slogan

A Tennessee adjuster sued by Nationwide Insurance for alleged trademark infringement because he used the company's slogan, On Your Side, in his firm's name and marketing, is fighting back in court and on the web.

Jeremy Snyder, owner of On Your Side Adjusting, acting as his own lawyer, has filed a court response to Nationwide's complaint in which he maintains he is the victim of a "willful" and "malicious" campaign by the insurer to protect, not the slogan, but what he alleges have been years of the insurer's own deceptive and false advertising.

Snyder says being his own lawyer will keep down his costs, part of his strategy to weather what could be a lengthy legal tangle with the giant insurer.

Snyder defends his past use of On Your Side in his company's name as a "fair use" of the slogan that represented what he as an adjuster does, while arguing that the insurer cannot be "on the side" of a policyholder and is therefore misleading the public when using the slogan.

He accuses Nationwide of also suing him for revenge because he represented some Nationwide claimants against the insurer.

Nationwide filed suit against Snyder and his firm on Feb. 28 at U.S. District Court for the Middle District of Tennessee in Nashville. The complaint charges On Your Side Adjusters and Snyder with trademark infringement, false designation and unfair competition.

In its complaint, Nationwide said its concern is that Snyder's use of the mark will cause "confusion, mistake, and deception" for consumers and the marketplace and "dilute the distinctiveness" of the mark.

Snyder filed his 245-page response and complaint on April 24.

Snyder claims he had stopped using all On Your Side material and was effectively put out of business before he was even served with Nationwide's complaint — which he says Nationwide knew but sued anyway.

His complaint alleges that Nationwide has destroyed his Gallatin, Tenn.-based adjusting business and caused him as sole owner to personally lose profits.

He alleges that the insurer "made a major blunder" in 1966 by building its company around a slogan that is false advertising and is now trying to protect what he alleges is a marketing conspiracy.

"Evidence will show that this case has not been brought by the Plaintiff to protect a trademark. The Plaintiff could not sanely fear that their 200 billion dollar company will be confused with or diluted by a small public adjusting company out of Middle Tennessee who uses a 'Fair Use' descriptive term in their company name that the Plaintiff feels resembles its slogan," Snyder writes in his complaint.

"Plaintiff's real agenda, an agenda in which it cannot raise in court, is the fear that if people are marketed a company who actually, descriptively, and by definition works on their side within the insurance claim process, the Plaintiff feels confusion may arise that will cause reasonable consumers to question, who in fact is actually working on their side."

For a remedy, Snyder is seeking an injunction barring Nationwide from ever again using the On Your Side slogan, treble damages of at least $75 million for the monetary loss of his business for 10 years, and punitive damages of at least $50 million.

Snyder likely faces a long road ahead.

Attorney Brian Smith of the law firm Smith Sholar Milliken in Snyder's own town of Gallatin has 30 years of experience in intellectual property. Smith believes Snyder might actually have a chance with a judge or jury since they tend to be more sympathetic to individuals than to large insurance companies.

"If he lasts financially and gets before a judge, he has some pretty good arguments," Smith told *Insurance Journal*.

However, Smith says it is unlikely Snyder will get that far because getting there will take too long and cost too much.

"They [Nationwide] will bury him in a 3-foot high stack of discovery documents and it will drag on forever," he said. "Unless he's got a lot of money, they will just outlast him."

For his part, Snyder says he is aware of the danger of being outspent and outlasted by Nationwide. He says that is why he has not yet hired a lawyer and plans to minimize his expenses as the case trudges along.

"Without a high priced international law firm running up a bill on every little task on my side, such as Nationwide has on their side, I am able to stick it out financially for as long as it takes. Only Nationwide will truly lose financially on such delays," Snyder told *Insurance Journal*.

"This case will eventually go to trial and we will win! To sum it up, I am not going anywhere because of financial restraints. "

Snyder says a trial could happen in September 2015.

To be fair to Nationwide, Gallatin attorney Smith says the insurer is only doing what it has to do. "They have to sue and it's not personal. I know he [Snyder] thinks it's personal but it's not," Smith says.

Under the dilution theory of trademark law, Smith says Nationwide has to fight any other use of its trademark or the company risks losing it or having it become a generic term or phrase.

That is much what Nationwide spokesman Joe Case told *Insurance Journal*:

"Nationwide's famous *On Your Side* slogan is a valuable asset and we owe it to our members and consumers to protect this unique brand component. The root issue in this situation remains the protection of Nationwide's intellectual property and avoiding consumer confusion. Nationwide will respond to the defendant's counter claim in court at the appropriate time."

According to Smith, there are unlikely to be any intellectual property lawyers willing to take Snyder's case on a contingency—except perhaps one hungry for publicity.

Snyder isn't just fighting in court; he's also fighting on the web.

He has converted his former firm's website at onyoursideadjusters.com into a site devoted to questioning Nationwide's own use of the slogan, with articles, polls, apparent testimonials and voiceovers accompanying the headline, "Is Nationwide really on your side, or are they using deceptive marketing?"

In a March 31, 2014 correspondence to Nationwide, Snyder outlined plans to start a campaign against Nationwide and launch a public campaign complete with website and television commercials to get the insurer to stop using the On Your Side slogan. He offered to cease his campaign and surrender ownership of onyoursideadjusters.com if Nationwide paid him $3 million and dropped its suit against him.

Nationwide declined that offer.

**Related Articles:**
Adjuster Claims Nationwide's 'On Your Side' Is Deceptive Advertising
Adjuster, Nationwide Mutual Take Sides Over 'On Your Side' Slogan
Travelers Sues British Insurance Company Over Umbrella-Shaped Logo
40 Million U.S. Jobs Tied to Intellectual Property Protection: Report
Ferrari Fight Over Facebook Fan Page Tests Social Media Copyright


**More from Insurance Journal**

Today's Insurance Headlines | Most Popular | National News